UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **In re:** Valentiono Sarli, *Debtor* | ) ) ) ) | **Case No.** 09-38776  Chapter 7 |
| ------------------------------------- | )-- | ----------------------------------- |
| James L. Harris and Lyubov N. Harris, *Plaintiffs* | ) ) ) ) | |
| v. | ) ) | **Adv. Proc. No.** 10-00160 |
| Valentino Sarli, *Defendant,* | ) ) | |

FILED FEB 1 2010 KENNETH S. GARDNER, CLERK US REP. - MBM UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS

### Adversary Proceding
### in Opposition to Discharge of a Debt Incurred Through Larceny
### under Chapter 523 of the United States Bankruptcy Code

*Relevant History*

1. On or about October 16, 2009, Valentino Sarli (hereinafter "Sarli") filed for Chapter 7 bankruptcy protection.

2. We first heard of the filing on December 7, 2009, when his former attorney, Paul Goodman handed me (James Harris) a copy of the one-page Notice of Bankruptcy Case Filing in open court in Room 2405 of the Richard J. Daley Building, Chicago, Illinois. James Harris and Lyubov Harris (Hereinafter "Harris") actually received a one-page Notice of Bankruptcy Case Filing with a cover page from Sarli by mail on January 7, 2010. (*See* paragraph 1 of attached Exhibit A and *see* entire Exhibit B.)

3. We have received no other notice (other than the one-page Notice of Bankruptcy Case Filing and the short cover letter discussed in paragraph 2 *supra*) and no other document of any kind from the Bankruptcy Court and/or bankruptcy Trustee and/or from Sarli and/or from any other person.

1

4. On February 15, 2002, James Harris discovered Valentino Sarli and his brother-in-law Stanley Pavilonis in the act of the theft of personal property belonging to James and Lyubov Harris. Sarli and Pavilonis avoided arrest on the scene through the use of lies and a false claim that he Sarli and another man (Jack Zausa) actually owned the property Sarli was in the process of stealing. It was shown on the next business day, that James and Lyubov Harris owned the property, but not in time to prevent the theft. The true facts related to ownership of the property are now well established through documents and depositions.

5. Harris sued Sarli for Conversion (theft) of personal property in 02-CH-9652 filed in Cook County, Illinois (*See* pages 17-22 of attached Exhibit C). Count 2 - Conversion against Valentino Sarli and Stanley Pavilonis describes the details of our claim.

6. The amount sought in the Conversion claim is $116,618 plus costs and attorneys fees and punitive damages, sought as a result of Sarli's deceitful, willful and malicious actions, which caused further harm to Harrises during the actual theft and in the interim time since the litigation was filed. The relief sought is "jointly and severally" against all parties. (*See* page 22, Prayer for Relief (Wherefore) paragraph of attached Exhibit C.)

7. As a result of a fraud scheme, in which Sarli played a significant role and the theft described in paragraphs 4 - 6 supra; Lyubov Harris suffered a miscarriage and the Harrises were made homeless. Furthermore, Harrises were persistently harassed, threatened and caused to suffer severe emotional distress by Sarli and others named in the Cook County litigation 02-CH-9652.

8. Harris' complaint against Sarli was stayed by the Cook County court on December 7, 2009, as related to Sarli, but will be scheduled to go to trial against Sarli's accomplice and Sarli pending the outcome of this adversary proceeding.

*Applicable Law*

9. Chapter 523(a)(2)(A) of the United States Bankruptcy Code does not allow the discharge of any debt incurred as a result of: ". . . property, . . . to the extent obtained by— (A) false pretenses, a false representation, or actual fraud . . .".

10. Chapter 523(a)(4) of the United States Bankruptcy Code does not allow the discharge of any debt incurred as a result of: ". . . larceny."

11. Chapter 523(a)(6) of the United States Bankruptcy Code does not allow the discharge of any debt incurred as a result of: "willful and malicious injury by the debtor to another entity or to the property of another entity."

12. Chapter 523(a)(19)(iii)(A) of the United States Bankruptcy Code does not allow the discharge of any debt incurred as a result of: "any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor."

### *Statement of Reasons Debt Should Not Be Discharged*

13. Sarli's debt to Harris is not dischargeable, because it falls under Chapter 523(a)(4) of the United States Bankruptcy Code and because it was incurred as a result of larceny. (*See* pages 18 - 21 of attached Exhibit C.)

14. Sarli's debt to Harris is not dischargeable, because it was not listed as a debt by Sarli and as a result Harris has not received notices and/or exhibits related to Sarli's filing; and

15. Sarli's debt to Harris is not dischargeable, because it falls under Chapter 523(a)(2)(A) of the United States Bankruptcy Code and because it was incurred as a result of:

    a. An actual theft of property, by Sarli, belonging to the Harrises (*See* pages 18-20, paragraphs 5(a-e) of attached Exhibit C); and

    b. Sarli used false pretenses to gain control and possession of said property (*See* pages 18-20, paragraph 5 of attached Exhibit C); and

    c. Sarli committed perjury in his testimony related to the ongoing litigation; and

    d. Sarli's act of theft was committed in furtherance of a fraud scheme; and

    e. Sarli avoided prosecution for theft by making false representation to the Berkeley, Illinois Police Department (*See* pages 18-20, paragraph 5 of attached Exhibit C); and

    f. Sarli used his position as "building manager" to 1) gain access to the property, and 2) keep Harris from securing the property, and 3) mislead the Berkeley Police in their investigation. (*See* pages 18-20, paragraph 5 of attached Exhibit C); and

16. Sarli's debt to Harris is not dischargeable, because it falls under Chapter 523(a)(6) of the United States Bankruptcy Code and because it was incurred as a result of: Willful and

malicious injury by Sarli to Harris in the form of: 1) harassment, and 2) death threats, and 3) nuisance phone calls, 4) creating and mailing items intended to harm Harris and his wife.

17. Sarli's debt to Harris is not dischargeable, because it falls under Chapter 523(a)(19)(iii)(A) of the United States Bankruptcy Code and because it was incurred as a result of: a court order for damages, penalty, restitution, attorney fees, cost and other payment owed by the debtor (Sarli) to Harris for sanctions in the ongoing litigation. (*See* page 22, paragraphs 8-11 of attached Exhibit C.)

18. It is manifestly unjust to allow Sarli to escape his responsibilities after he was: 1) caught red-handed in the act of theft; and 2) avoided judgment by the use of every conceivable deceit and perjury; and 3) compounded his crimes by harassing his victims; and 4) participated in furthering and concealing the Fraud and Theft by employing the malicious and willful intimidation conduct described in Count 1 - Fraud of the Counterclaim.

19. In the Cook County matter Sarli compounded his crimes and the cost incurred by his victims by the use of every conceivable device including, but not limited to:

    a. An initial claim that James Harris had no right to be on the premises where the theft occurred and that James Harris should be arrested and which claim has now been shown to be absolutely false; and

    b. Participating in and at times leading an effort to intimidate and harass Harrises and other persons named as witnesses by Harrises in the Cook County litigation 02-CH-9652; and

    c. A false claim that he was actually entitled to take possession of Harrises' property due to the Illinois Storage Lien Act and which claim he has now disavowed; and

    d. An absolute refusal to cooperate with discovery and court orders, which caused considerable additional costs to Harries; and

    e. A series of perjuries and false statements, which caused Harries to incur the costs of depositions and subpoenas in order to make the true facts known.

20. Sarli has admitted a portion of the malicious and willful intimidation conduct described in paragraph 16 *supra*. Sarli admitted in his deposition and Interrogatory answers that he: 1) made at least one harassing telephone call to the creditors and victims of the theft; and 2) prepared and mailed a bogus newsletter he entitled the: "Berkeley News" for the purpose of harassing Harrises, the creditors in this action and the victims of Sarli's theft.

4

21. In the Cook County litigation, Sarli 1) has been deposed; and 2) discovery is completed; and 3) the court has ruled in Harrises' favor on numerous Motions for Summary Judgment; and 4) Sarli is in default due to his failure to file a supplemental appearance. Now, with the Bankruptcy filing, Sarli is continuing his all-out, 8-year effort to avoid his responsibilities to his victims. The filing of this Bankruptcy is nothing more than Sarli's last ditch effort to avoid paying for his crimes.

22. Additionally, the bankruptcy court may deny Sarli a discharge, because in this matter Sarli:

    a. Failed to keep or produce adequate books or financial records; and

    b. Failed to explain satisfactorily any loss of assets; and

    c. Committed perjury; and

    d. Failed to list Harris as a creditor.

23. Furthermore, Harris believes that Sarli fraudulently transferred, concealed, or destroyed property that would have become property of the estate.

### *Relief Requested*

**WHEREFORE** the Creditors James Harris and Lyubov Harris request this honorable court to enter an order:

A. Denying the discharge of Valentino Sarli's debt to James Harris and Lyubov Harris; and

B. Allowing James Harris and Lyubov Harris to proceed with the Cook County litigation 02-CH-9652 related to Sarli's Conversion (theft) of their property and any related litigation; and

C. Delaying the discharge of Valentino Sarli's debt to James Harris and Lyubov Harris until such time as a jury in the Cook County case 02-CH-9652 determines liability and damages; and

D. Granting other such relief as this Honorable Court may deem appropriate.

Respectfully submitted by:

DATED: January 30, 2010.

_____
James L. Harris, *pro se*

5

DATED: January 30, 2010.

Lyubov Harris, *pro se*

## CERTIFICATE OF SERVICE BY MAILING

The undersigned certifies, under penalties as provided by law, that he served the documents listed below on Valentino Sarli at 3 Gilbert, LaGrange, IL 60525 by placing them in the United States Mail with proper First Class postage applied prior to 5:00 p.m. on January 30, 2010 at Carbondale, CO and further that the statements set forth in this Certificate of Service are true and correct:

1. Complaint under Chapter 523 of the United States Bankruptcy Code with attached Notice of Motion and Certificate of Service.
2. Cover letter for Adversary Pleading.

DATED: January 30, 2010.

James L. Harris, *pro se*

James L. Harris
Lyubov Harris
161 Floyd Street
El Jebel, CO  81623
Phone: (970) 274-8030, (970) 433-3303
E-mail: millwork1954@yahoo.com

6

United States Bankruptcy Court
Northern District of Illinois

## Notice of Bankruptcy Case Filing



A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 7 of the United States Bankruptcy Code, entered on 10/16/2009 at 2:34 PM and filed on 10/16/2009.

**Valentino Sarli**
3 N Gilbert
LaGrange, IL 60525
SSN / ITIN: xxx-xx-0123

The bankruptcy trustee is:

**David P Leibowitz, ESQ**
Leibowitz Law Center
420 Clayton Street
Waukegan, IL 60085-4232

847-249-9100

The case was assigned case number 09-38776 to Judge Pamela S. Hollis.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page http://www.ilnb.uscourts.gov/ or at the Clerk's Office, Eastern Division, 219 S Dearborn, 7th Floor, Chicago, IL 60604.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

Kenneth S. Gardner
Clerk, U.S. Bankruptcy Court



Ex A

December 31, 2009

Attention: James Harris, on December 30th 2009 The United States Bankruptcy court of the Northern District ordered me to forward you the attached notice of my bankruptcy.

Please keep this for your file.

I will no longer be involved in your case.


Respectfully

*Valentino Sarli*

Valentino Sarli

3 North Gilbert

LaGrange IL 60525

Ex B

Attorney Code 37728
IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| Zausa Development Corporation, *et al.*, <br> Plaintiffs, <br><br> v. <br><br> James L. Harris, *et al.*, <br> Defendants. <br><br>———————————————————— <br><br> James L. Harris and Lyubov Harris, <br> Counter-Plaintiffs, <br><br> v. <br><br> Zausa Development Corporation, *et al.*, <br> Counter-Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 02 CH 9652 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## FIFTH AMENDED COUNTERCLAIM

### COUNT I [FORMER COUNT II]
### COMMON LAW FRAUD
### SEPARATE ACTION AT LAW

NOW COMES the Counter-Plaintiff, James L. Harris, by counsel, and complaining of the Counter-Defendants, Jack Zausa and Paul Desmarteau, states as follows:

1. During the period of time from on or about August 1, 2001 to on or about February 13, 2002, the Counter-Plaintiff, James L. Harris, worked as a building manager and performed services for Zausa Development Corporation (referred to hereinafter in this Count and in various other Counts in this Fifth Amended Counterclaim as "ZDC") and Jack Zausa under the terms of an oral agreement related to an office building located at 5544 West St. Charles Road, Berkeley, Cook County, Illinois (referred to hereinafter in this Count and in various other Counts in this Fifth Amended Counterclaim as "5544") as is more fully set out below.

2. At all times relevant herein, Jack Zausa and ZDC were engaged in the business of development, management, financing and leasing commercial buildings, and doing business in, the aforesaid 5544 office building from the principal ZDC office located at 15316 Willshire,





# PLEASE NOTE

# PAGES 2-16 and 22-29 OF THE ATTACHED COUNTERCLAIM WERE NOT INCLUDED AS EXHIBITS SINCE THEY DO NOT RELATE THE LARCENCY BY VALENTINO SARLI

excess of $5,000,000.00.

## DAMAGES

23. As a result of the Counter-Defendants' conduct in making the aforesaid false promises and deceptions, the Counter-Plaintiff suffered damages in the loss of the following:

a. Lease bonus due in the amount of $1,250.00;
b. Cash accumulation amount for management services and labor based on building appreciation in the amount of $47,398.00;
c. Anticipated profit on building material sales in the amount of $75,000.00;
d. Anticipated profit on separate building material sales from existing inventory in the amount of $11,500.00;
e. Materials and supplies in the amount of approximately $100.00;
f. Anticipated profit on the sale of 5544 in the amount of $183,750.00 less the amount of $47,398.00 or an anticipated net profit of $136,352.00.

WHEREFORE, the Counter-Plaintiff, James L. Harris, prays that this Honorable Court enter judgment in favor of the Counter-Plaintiff and against the Counter-Defendants, jointly and severally, for:

A. Compensatory damages in the sum of $271,600.00.
B. Punitive damages in a proper amount.
C. Attorney's fees in a reasonable amount.
D. For pre-judgment interest in the proper amount.
E. Costs of suit.
F. Such other and further relief as this Honorable Court deems proper.

COUNTER-PLAINTIFF DEMANDS TRIAL BY JURY.

March 30, 2005.

_James L. Harris_, Counter-Plaintiff

## COUNT II   [FORMER COUNT III]
## CONVERSION OF PERSONAL PROPERTY - SARLI AND PAVILONIS
## SEPARATE ACTION AT LAW

NOW COME the Counter-Plaintiffs, James L. Harris and Lyubov Harris, by counsel, and

17

complaining of the Counter-Defendants, Valentino Sarli and Stanley Pavilonis, state as follows:

1. During the period of time from on or about August 1, 2001 to on or about February 13, 2002, the Counter-Plaintiff, James L. Harris, occupied and used storage space in a building located at 5544 West St. Charles Road, Berkeley, Cook County, Illinois (referred to hereinafter in this Count as "5544") with the knowledge, consent and permission of the beneficial owner thereof.

### COUNTER-PLAINTIFF HAS RIGHT TO THE PROPERTY

2. At all times relevant herein, the Counter-Plaintiffs owned and had and continue to have the absolute and unconditional right to, by original purchase and acquisition, and are entitled, to the immediate use, possession and enjoyment of the items of personal property listed in Exhibit A attached hereto and incorporated herein by reference and hereinafter referred to as "said personal property" herein.

3. The Counter-Plaintiffs had earlier stored the said personal property in storage space in 5544 with the knowledge, consent and permission of the beneficial owner thereof who controlled the use and occupancy of the premises at 5544 and had the right to so consent and permit said storage and the Counter-Plaintiffs had the legal right to enter and to be in 5544.

### COUNTER-PLAINTIFF HAS AN ABSOLUTE AND UNCONDITIONAL RIGHT TO THE IMMEDIATE POSSESSION OF THE PROPERTY

4. The Counter-Plaintiffs never gave the control and possession of, or any other right, title and/or interest in, the said personal property to any of the Counter-Defendants or to any other person or entity.

### COUNTER-DEFENDANTS WRONGFULLY AND WITHOUT AUTHORIZATION ASSUMED CONTROL, DOMINION, OR OWNERSHIP OVER THE PROPERTY

5. Starting on or about February 13, 2002, Valentino Sarli and Stanley Pavilonis, without the knowledge, consent or permission of the Counter-Plaintiffs, wrongfully and without any authorization, knowledge or consent from the Counter-Plaintiffs assumed control, dominion or ownership over the said personal property of the Counter-Plaintiffs and wrongfully converted the said personal property to the use of the Counter-Defendants in the following ways:

a. On or about February 13, 2002 Valentino Sarli had the locks changed on the main 5544 building entrances and garage and thereby locked the Counter-Plaintiffs out of the entire 5544 building including the aforesaid garage storage space and offices which the Counter-Plaintiffs were using to store the said personal property and to manage the 5544 building, and thereby prevented the Counter-Plaintiffs from entering therein because the Counter-Plaintiffs possessed only keys which worked in the old locks.

b. On February 13, 2002, James L. Harris tried to use his old key in the lock to the main entrance doors and garage door as he had done in the past and said key would not open that lock as it had before that date;

c. On February 15, 2002 prior to about 1:00 p.m., Valentino Sarli and Stanley Pavilonis gained entry to the said storage space used by the Counter-Plaintiffs and on said date, James L. Harris:

(1). Arrived at the premises and saw Stanley Pavilonis back a van up to the garage door and then enter the garage and carry a cardboard box out from the garage storage area and put it in the van;

(2). Saw through the garage service door Valentino Sarli and Stanley Pavilonis in the said storage space where they or either of them were not authorized or given authority to be by the Counter-Plaintiffs and further saw them handling, touching, picking up and moving items of said personal property belonging to the Counter-Plaintiffs.

(3). Knocked on the locked garage service door and Valentino Sarli opened the garage door from the inside and then Valentino Sarli and Stanley Pavilonis looked at James L. Harris and immediately dropped items of the said personal property of the Counter-Plaintiffs they had been holding and started to leave in great haste from the garage area; James L. Harris then immediately called the Berkeley police to report the incident and requested that the Berkeley police come to 5544;

(4). Heard officer Frank Fanelli of the Berkeley police, who had arrived at 5544, say to James L. Harris that Valentino Sarli had called the Berkeley, Illinois Police Department just minutes ago and said he was the building manager of 5544 and that "Harris (referring to James L. Harris) was a trespasser" on the premises at 5544 and demanded that the Berkeley police remove James L. Harris from the premises and keep James L. Harris "away from the premises or arrest him (referring to Harris) if he should return" to 5544;

(5). Heard officer Frank Fanelli state to James L. Harris that Valentino Sarli

19

had just stated to officer Fanelli that James L. Harris did not own any property inside the building or on the premises at 5544 and that everything in the garage and office suite was the property of Jack Zausa;

(6). Subsequently, heard Valentino Sarli falsely state to the Berkeley police officers that the contents of the building suites and the garage belonged to Jack Zausa and not to James L. Harris and that Valentino Sarli wanted the police officers to remove James L. Harris from the premises at 5544 and said police then removed James L. Harris from the premises and the said personal property remained in the garage at 5544;

d. On February 15, 2002, as Berkeley police were forcing James L. Harris to leave the premises of 5544, the Berkeley police said to and gave notice to James L. Harris under the provisions of the Criminal Code of Illinois, that James L. Harris and his agents were not to enter again upon the premises located at 5544 without police escort thereby preventing James L. Harris from obtaining possession of the various items of said personal property of the Counter-Plaintiffs present there in the premises on that date all under the threat of arrest of James L. Harris by the Berkeley police.

e. On February 18, 2002, James L. Harris entered the premises at 5544 with a Berkeley police officer escort and recovered and removed some items of said personal property that James L. Harris could specifically identify to the satisfaction of that police officer but by that time the comparatively high-value items of said personal property listed in Exhibit A including the high-value portion of the baseball cards were not present in the garage storage area and which had been present on February 15, 2002 and prior thereto.

## COUNTER-PLAINTIFF MADE DEMAND FOR POSSESSION

6. On numerous occasions, the Counter-Plaintiffs made demands of each of the Counter-Defendants for possession of and return to the Counter-Plaintiffs of said personal property:

a. On February 15, 2002, James L. Harris, while standing in the parking lot at 5544, spoke directly to Valentino Sarli and Stanley Pavilonis in the presence of the Berkeley police officers and demanded that Valentino Sarli and Stanley Pavilonis return immediately to James L. Harris the items of said personal property in their possession in the garage at that point.

b. On February 15, 2002 James L. Harris mailed to Valentino Sarli a letter demanding the return to the Counter-Plaintiffs said items of personal property;

c. On February 18, 2002 James L. Harris appeared in person with a police escort at

20

5544 and demanded that Valentino Sarli and Jack Zausa return to the Counter-Plaintiffs said items of personal property;

    d.    On March 11, 2002 James L. Harris appeared in person with a police escort at 5544 and demanded that Valentino Sarli and Jack Zausa return to the Counter-Plaintiffs said items of personal property;

    e.    On September 9, 2003 in a face-to-face meeting and conversations involving Valentino Sarli, his then attorney of record, James Kenny, and James L. Harris in the office of attorney James Kenny:

    (1).    Valentino Sarli further stated to James L. Harris that Valentino Sarli "saw the valuable things in the garage and . . . (he) knew that it wasn't junk."

    (2).    Valentino Sarli further further stated to James L. Harris concerning the conversion of the said personal property that Sarli "knew what had happened (referring to the reported conversion) was terrible" and that he (Sarli) would like to "make things right, but . . . he (Sarli) was near bankruptcy and could only do so much . . . and could you (referring to James L. Harris) forgive me."

    (3).    Valentino Sarli further stated to James L. Harris that Valentino Sarli had actual possession of the baseball cards.

    (4).    Valentino Sarli further stated to James L. Harris that "things had gone too far and that … (Valentino Sarli) decided to come clean and return the property still in his possession and to bring this matter to an end if possible";

    (5).    James L. Harris saw, examined and recognized in the office of James Kenny approximately 28,000 of his less valuable baseball cards which James L. Harris had placed in the garage storage area on or about December 3, 2001 and which were still in said storage area on February 15, 2002 at the time when James L. Harris arrived at 5544 and then after a short time was ordered off the premises removed by the Berkeley police at the request of Valentino Sarli.

    f.    On or about September 1, 2003 Valentino Sarli through his attorney James Kenny said to James L. Harris that Sarli "has possession of and wants to return several boxes of baseball cards" to James L. Harris.

7.    The Counter-Defendants have refused and failed to return to the Counter-Plaintiffs said personal property except for some items of smaller value and have returned none of the relatively high-value items including the high-value baseball cards.

21

## DAMAGES

8. As a direct and proximate result of the conduct of each of the Counter-Defendants as described above in converting the said personal property, the Counter-Plaintiffs were damaged in the sum of $113,157.00 less the fair market value of the baseball cards referred to in this Count III, paragraph 6e(5) *supra*.

9. The aforesaid conduct of the Counter-Defendants in wrongfully and illegally taking and keeping the possession and control of the said personal property of the Counter-Plaintiffs was malicious, willful and designed to damage and injure the Counter-Plaintiffs.

10. Punitive damages are necessary to punish the Counter-Defendants for their aforesaid conduct and to deter the Counter-Defendants and others from committing similar transgressions in the future.

11. Illinois law provides for the payment of pre-judgment interest in situations such as that set out above and the Counter-Defendants should be ordered to pay pre-judgment interest to the Counter-Plaintiffs based on the fair market value of the said personal property converted as of the date of conversion less the fair market value of items of said personal property listed in Exhibit A and returned to the possession of the Counter-Plaintiffs as of the date of return.

WHEREFORE, the Counter-Plaintiffs, James L. Harris and Lyubov Harris, pray that this Honorable Court enter judgment in favor of the Counter-Plaintiffs and against the Counter-Defendants, Valentino Sarli and Stanley Pavilonis, jointly and severally, as follows:

A. In the amount of $113,157.00 for the fair market value of the said personal property listed in Exhibit A, attached hereto, on the date of the said conversion less the fair market value of the baseball cards referred to above in paragraph 6e(5).

B. For punitive damages in a proper amount.

C. For pre-judgment interest in a proper amount.

D. For costs of suit.

E. For such other and further relief as this Honorable Court deems proper in this cause.

COUNTER-PLAINTIFFS DEMAND TRIAL BY JURY.

March 30, 2005.

_____
James L. Harris, Counter-Plaintiff

March 30, 2005.

_____
Lyubov Harris, Counter-Plaintiff

22